## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **RICHARD A. JELLYMAN,** | ) | |
| | ) | |
| | ) | **CIVIL ACTION** |
| **Plaintiff,** | ) | |
| | ) | **NO. 18-40030-TSH** |
| **v.** | ) | |
| | ) | |
| **CITY OF WORCESTER, and OFFICER** | ) | |
| **MICHAEL SPALATRO, JARRET** | ) | |
| **WATKINS, PAUL CYR, NATHAN** | ) | |
| **LAFLECHE and ADAM J. BULLOCK,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

### ORDER AND MEMORANDUM ON DEFENDANT'S MOTION TO DISMISS (Docket No. 11)

### January 22, 2019

Richard A. Jellyman ("Plaintiff") brought this claim for excessive force (Count I), assault and battery (Count II), intentional infliction of emotional distress (Count III), violation of civil rights pursuant to 42 U.S.C. § 1983 (Count IV), and conspiracy (Count V) against the City of Worcester, Officers Michael Spalatro, Jarret Watkins, Paul Cyr, and Nathan Lafleche, and Adam J. Bullock.  Defendants Cyr and Watkins ("Defendants") move to dismiss Counts I, III, and V against them pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  For the reasons stated below, Defendants motion to dismiss (Docket No. 11) is ***granted*** in part and ***denied*** in part.

### Background

The following facts are taken from Plaintiff's complaint and are assumed to be true at this stage of the litigation. (Docket No. 1).  On March 6, 2015, Plaintiff began to experience a

hypoglycemic event as he was leaving a business establishment in Worcester.  In a confused and impaired condition, he began to operate his vehicle and backed into a parked car.  Officer Michael Spalatro witnessed the event and attempted to stop Plaintiff.  Plaintiff, however, did not heed Officer Spalatro's instructions and drove off.  As he did, his rear-view mirror made contact with Officer Spalatro's hip.  Officer Spalatro called the police dispatcher and a BOLO was called for Plaintiff's vehicle.  A few blocks from this scene, Plaintiff was stopped without incident by Officer LaFleche.  LaFleche then radioed Spalatro that Plaintiff was in custody and asked him to come to the scene to identify Plaintiff.  Officer Spalatro arrived soon after and approached Plaintiff who was handcuffed and, without warning, punched him in the face.  Officer Spalatro failed to document his use of force in violation of the Worcester Police Department's policies.  Similarly, none of the other officers reported Spalatro's actions in written reports to any of their superiors.

### Standard of Review

A Rule 12(b)(6) motion is used to dismiss complaints that do not "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559, 127 S.Ct. 1955 (2007). Although detailed factual allegations are not necessary to survive a motion to dismiss, the standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555, 127 S.Ct. 1955. "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 13 (1st Cir. 2011).

In evaluating a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v.*

*American Airlines, Inc.*, 199 F.3d 68, 68 (1st Cir. 2000). It is a "context-specific task" to determine "whether a complaint states a plausible claim for relief," one that "requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937 (2009) (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). On the other hand, a court may not disregard properly pled factual allegations, "even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955.

Finally, "'some latitude may be appropriate' in applying the plausibility standard in certain types of cases . . . in which a material part of the information needed is likely to be within the defendant's control." *Garcia-Catalan v. United States*, 734 F.3d 100, 104 (1st Cir. 2013). Moreover, the First Circuit has noted that "the plausibility inquiry properly takes into account whether discovery can reasonably be expected to fill any holes in the pleader's case." *Id.; see also Menard v. CSX Transp., Inc.*, 698 F.3d 40, 45 (1st Cir. 2012) ("Where modest discovery may provide the missing link, the district court has discretion to allow limited discovery and, if justified, a final amendment of the complaint.").

## Discussion

*1.   Count I: Failure to Protect/Intervene*

The Fourth Amendment not only protects individuals from excessive force, it also imposes an affirmative duty on police officers to intervene to prevent it.  *See Gaudreault v. Salem*, 923 F.2d 203, 207 n.3 (1st Cir. 1990).  Therefore, an officer present at the scene of a stop or arrest who observes the use of excessive force, but fails to intervene, violates the Fourth Amendment if he had the means and opportunity to prevent or mitigate the harm to the victim. *Id.*  However, "mere

presence [of an officer] at the scene, without more, does not by some mysterious alchemy render him responsible under Section 1983 for the actions of a fellow officer." *Calvi v. Knox County*, 470 F.3d 422, 428 (1st Cir. 2006).  Consequently, an "officer cannot be held liable for failing to intercede if he has no 'realistic opportunity' to prevent an attack." *Gaudreault*, 923 F.2d at 207 n.3.

Here, Plaintiff has plead facts that make it plausible that Officers Cyr and Watkins could have intervened.  Whether discovery will reveal Officers Cyr and Watkin's awareness of the impending assault remains to be seen.  This is a case where the information needed is within Defendants' control and discovery may, or may not, establish the knowledge requirement.

2. *Count III: Intentional Infliction of Emotional Distress*

In order to maintain a cause of action for intentional infliction of emotional distress under Massachusetts law, the plaintiff must establish that (1) the individual defendant intended to inflict emotional distress or that they knew or should have known that emotional distress was the likely result of their conduct; (2) the conduct of the defendant was "extreme and outrageous" and "beyond all possible bounds of decency and was utterly intolerable in a civilized community;" (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was "severe" and of such a nature "that no reasonable person could be expected to endure it." *Agis v. Howard Johnson Co.*, 371 Mass. 140, 144-45, 355 N.E.2d 315 (1976).

Much like the case above, if Officers Watkins and Cyr were aware that Officer Spalatro was planning to assault Plaintiff, then Plaintiff may have a cognizable claim for intentional infliction of emotional distress against all three officers.  However, this information is in the sole possession of the Defendants and therefore allowing discovery is appropriate.

4

3. *Count V: Conspiracy*

"A civil rights conspiracy as commonly defined is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages." *Estate of Bennett v. Wainwright*, 548 F.3d 155, 178 (1st Cir. 2008) (quotation marks and citation omitted).  Thus, in order to "present an adequate conspiracy claim, there must be allegations of (1) an agreement between two or more state actors . . . (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Williams v. City of Boston*, No. 10-10131-PBS, 2013 WL 1336584, *11 (D. Mass. March 14, 2013).  "In order to make out an actionable conspiracy under section 1983, a plaintiff has to prove not only a conspiratorial agreement but also an actual abridgment of some federally-secured right." *Nieves v. McSweeney*, 241 F.3d 46, 53 (1st Cir. 2001).  A conspiracy may be a "matter of inference." *Estate of Bennett*, 548 F.3d at 178.  However, "a claim of conspiracy to deprive a plaintiff of civil rights will not survive a motion to dismiss if it makes conclusory allegations without making supporting factual assertions." *Diaz v. Devlin*, 229 F. Supp. 3d 101, 111 (D. Mass. 2017) (citing *Slotnick v. Staviskey*, 560 F.2d 31, 33 (1st Cir. 1977)).

Here, Plaintiff argues that "Defendants' [sic] conspired to hide Jellyman's beating in order to protect Spalatro from the unreasonable use of force and themselves for failing to report Jellyman's assault and by preparing untruthful reports." (Docket No. 1, ¶ 82).  Thus, "[u]nder the [Plaintiff's] own theory of the case, the . . . conspiracy did not antedate the arrest, but, rather, arose afterwards, sparked by the officers' perceived need to cover up their unwarranted brutality." *Nieves*, 241 F.3d at 52.  In cases such as these, the First Circuit has held "the conspiracy to be distinct from the events that triggered the need for it." *Id.* (citation omitted); *see also Landrigan v.*

*City of Warwick*, 628 F.2d 736, 741 (1st Cir. 1980) (holding excessive force and subsequent coverup to be "separate and distinct wrongs resting on different factual bases"). Consequently, "[f]or such a claim to be successful, the cover-up must result in an independent constitutional violation—such as interfering with a plaintiff's ability to seek judicial redress." *Watson v. Perez*, 168 F. Supp. 3d 365, 373 (D. Mass. 2016) (citations omitted); *see also Correai v. Town of Framingham*, 969 F. Supp. 2d 89, 98 (D. Mass. 2013) ("[T]he filing of a false police report does not, by itself and without further consequences to the plaintiff, violate § 1983. This Court is persuaded that an officer's failure to file a police report, in furtherance of an alleged conspiracy to cover-up wrong-doing, does not constitute an independent constitutional violation and therefore cannot support plaintiff's' cover-up conspiracy claim." (citation omitted)); *Shea v. Porter*, 2013 WL 1339671, at *4-5 (D. Mass. Mar. 29, 2013) (granting summary judgment for a Section 1983 conspiracy claim where there was no evidence the conspiracy predated the incident but instead was a cover-up afterwards and therefore it was "far from clear from plaintiff's briefing what constitutional violation is alleged to have resulted from the cover-up").

Here, Plaintiff has not claimed that any constitutional deprivation resulted from the alleged conspiracy. As a result, it is not sufficiently pled.

## Conclusion

Plaintiff has plausibly alleged that Defendants failed to protect him and intentionally inflicted emotional distress upon him. Plaintiff has not, however, plausibly established that a conspiracy existed which deprived him of a constitutional right. Consequently, Defendants' motion to dismiss (Docket No. 11) is ***granted*** in part and ***denied*** in part. Counts I and III survive this motion and Count V is dismissed.

**SO ORDERED**

/s/ *Timothy S. Hillman*
TIMOTHY S. HILLMAN
DISTRICT JUDGE